**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

|  |  |
|---|---|
| DOW AGROSCIENCES LLC, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 8:09-cv-824 |
| ) | |
| NATIONAL MARINE FISHERIES ) | |
| SERVICE, et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MOTION TO EXPEDITE DISPOSITION**

Plaintiffs Dow AgroSciences LLC, Makhteshim Agan of North America, Inc., and Cheminova, Inc., respectfully move the Court to expedite this action. A Proposed Scheduling Order is attached.

As set forth in the Complaint, this case presents a challenge under the Administrative Procedure Act ("APA") and the Endangered Species Act ("ESA") to actions by the National Marine Fisheries Service ("NMFS"), a Federal agency. (Compl. ¶ 1.)

Prompt entry of the attached Proposed Scheduling Order will serve the interests of justice, and avoid extraordinary hardship to Plaintiffs. Moreover, this is a record review case that is procedurally straightforward, and thus can quickly be considered without prejudice to the Defendants.

**I.    AUTHORITY AND STANDARD FOR EXPEDITING**

Local Rule 103(a) directs the Court to "enter such orders as are necessary to assure the prompt and expeditious resolution of the litigation." This requirement is consistent with 28 U.S.C. § 1657(a), which authorizes the Court to "expedite the consideration of any action . . . if good cause therefore is shown."

One good cause to expedite this case is that doing so likely will avoid initiation of (or, at least, substantial activity in) duplicative administrative proceedings that will impose considerable burdens on a United States agency that is not a party to this suit – the U.S. Environmental Protection Agency ("EPA") – and each of the Plaintiffs. Another is that extraordinary hardship to Plaintiffs, arising both from the avoidable costs of those additional administrative proceedings and lost sales and profits, will be avoided.[1] We explain both considerations below.

## II.    FACTUAL CONTEXT

Plaintiffs hold "registrations" on their products issued by EPA under authority of the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. §§ 136-136y ("FIFRA"). These registrations authorize Plaintiffs to sell pesticides containing certain specified "active ingredients" in the United States. Each registration specifies the conditions under which the registered pesticide can be applied and directions that must be followed in doing so.

The ESA requires consultation between EPA and Defendant NMFS about the possible impact of certain EPA actions on endangered species. In 2002, EPA requested consultation with NMFS about the impact of Plaintiffs' registrations containing the active ingredients chlorpyrifos, diazinon, and malathion on salmonids (essentially, salmon) in California, Oregon, Washington, and Idaho. Defendants took no substantive action in response to this request until a meeting with EPA in December 2007. NMFS then undertook the analysis EPA had requested and, in August and September of 2008, allowed comment by EPA and Plaintiffs.

---

[1] The legislative history of Section 1657(a) provides that good cause should be found "in a case in which failure to expedite would result in extraordinary hardship to a litigant." H. Rep. No. 98-954, at 6 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5779, 5784.

On November 18, 2008, Defendants issued a "Biological Opinion" that stated its findings. NMFS found that the directions for product use established by EPA's current registrations were insufficient to avoid jeopardy to the continued existence of twenty-six Evolutionary Significant Units ("ESUs") of Pacific salmonids.  (Compl. ¶¶ 2, 45.)

Defendants accompanied the issuance of this opinion with a list of additional restrictions on the use of Plaintiffs' products and related actions EPA should impose on Plaintiffs or otherwise take to prevent jeopardy to the pertinent species and to avoid destruction or modification of their habitat.  Lists of this sort are known as Reasonable and Prudent Alternatives ("RPAs") and Reasonable and Prudent Measures ("RPMs").  The ESA requires EPA to act in response to these RPAs and RPMs.  50 C.F.R. § 402.15(a).  NMFS' Biological Opinion also required that EPA's response be implemented within one year – that is, by November 18, 2009.  (Compl. ¶ 45.)

## III. FAILURE TO EXPEDITE WILL IMPOSE UNNECESSARY BURDENS ON BOTH THE UNITED STATES AND PLAINTIFFS AND RESULT IN UNDUE HARDSHIP TO PLAINTIFFS

Voluntary acceptance by Plaintiffs of the restrictions to their chlorpyrifos, diazinon, and malthion registrations that NMFS has specified would have severe economic consequences.  In the absence of either such voluntary acceptance or a prompt decision by this Court, however, both Plaintiffs and the United States (in the form of EPA) will face additional signficant litigation burdens, including potential criminal prosecution, and Plaintiffs will face significant economic injury.

These consequences would arise for several reasons.  First, continued use of the products in affected areas in accordance with the products' existing label directions (which do not incorporate NMFS' recommendations), after the November 2009 deadline, can be alleged to be illegal "takings"

under Section 9(a)(1)(B) of the ESA, 16 U.S.C. § 1538(a)(1)(B).[2] Such takings are subject both to criminal and civil penalties and can trigger the opportunity for both the government and private parties to seek to obtain injunctive relief. 16 U.S.C. § 1540. Further, unless Defendants' Biological Opinion is withdrawn or vacated – as this suit seeks – defendants in those takings suits will face perhaps insurmountable impediments. Faced with this risk, Plaintiffs' customers are likely to turn to the use of other products that would not subject them to potential litigation.

Potential takings suits aside, Plaintiffs will face enormous litigation burdens in resisting EPA's inevitable efforts to compel them to revise their registrations to accommodate NMFS' recommendations. While EPA has an independent obligation to evaluate NMFS' recommendations, and currently is doing so, the EPA must respond to NMFS' recommendations.[3] It is likely that EPA will require that Plaintiffs make either the changes NMFS has directed to their registrations, or changes very similar to them.

If Plaintiffs do not voluntarily agree to accept EPA's demands – and they do not expect to be able to do so, because doing so would implicate severe economic consequences – they and their customers will face the "takings" suits described above. In addition, EPA's mechanism for complying with the ESA and NMFS' recommendations must be to initiate FIFRA administrative proceedings against Plaintiffs to either require those changes or prohibit future sale of the products. These proceedings will raise the same issues presented in this case, as well as many others.

It almost certainly will be impossible for these EPA administrative proceedings to be completed prior to NMFS' November 2009 deadline for the implementation of NMFS' directives, which means

---

[2] Plaintiffs do not believe such allegations, if made, should be sustained, but the possibility of their assertion is real and the possibility of their successfully being overcome is uncertain.

[3] *See* 50 C.F.R. § 402.15(a) ("Following the issuance of a biological opinion, the Federal agency shall determine whether and in what manner to proceed with the action in light of its section 7 obligations and the Service's biological opinion").

4

that Plaintiffs and their customers will face the risk of "takings" litigation. Moreover, these administrative proceedings will be expensive and burdensome for both the United States and Plaintiffs. EPA's administrative action would take the form of either suspension hearings under Section 3(c)(2) or Section 6(c) of FIFRA, 7 U.S.C. § 136a(c)(2) or 136d(c), or cancellation hearings under Section 6 of FIFRA, 7 U.S.C. § 136d, or both. These are evidentiary hearings. The hearing(s) as to each of the three products involved in this case would present distinct issues, and consolidation, even if possible, thus would not prevent considerable complication. Each case will be vigorously contested. Moreover, either type of hearing would be unprecedented because EPA has never before sought to compel amendments to registrations to comply with purported requirements to protect endangered species. This means many procedural and substantive legal issues will have to be resolved for the first time, without instructive precedent.[4]

In short, both Plaintiffs and EPA will face substantial burdens in the unavoidable administrative hearings, in which they would be litigating the same issues raised in this case, as well as others (such as the fundamental scientific soundness of NMFS' decisionmaking). Both sides will be required to devote substantial resources to the proceedings.

In addition, once such proceedings are announced, Plaintiffs' existing customers are likely to have another reason to "deselect" plaintiffs' products – the uncertainty of whether continued use of the products will be allowable. Such impacts on sales will be felt long before the EPA hearings are

---

[4] By way of example, one issue that will make these proceedings particularly complex is uncertainty over precisely what issues can be heard in each. In a Section 3(c)(2)(B) suspension hearing, for example, review of all the scientific issues may not be obtainable because of language in FIFRA that limits the litigable issues to whether the registrant has taken "appropriate steps" to respond to EPA's data demand and whether adequate provision has been made for handling of previously manufactured stocks of the product(s). The limited precedent on this issue (*see Atochem North America, Inc. v. E.P.A.*, 759 F. Supp. 861, 863-64 (D.D.C. 1991)) and due process issues the statutory provision raises likely would trigger extensive litigation.

5

complete, as a further reduction of Plaintiffs' sales, even if it is limited only to the areas to which NMFS' directives are to be applied. Moreover, since EPA's proceedings likely would challenge the continued overall registration of Plaintiffs' products, this "deselection" impact (unlike deselection resulting from the risk of takings litigation) may be felt nationwide, thus increasing Plaintiffs' economic injury.

In contrast, if this Court expedites its consideration of this lawsuit and grants the relief Plaintiffs seek, EPA's implementation obligations will be mooted and the administrative proceedings described above avoided. Alternatively, if the Court expedites consideration and rejects the relief Plaintiffs seek, the remaining issues to be addressed by EPA will be substantially narrowed and the anticipated administrative proceedings may be shortened or even avoided. Expediting this case will thus serve the interests of justice and economy and avoid imposition of undue hardship on Plaintiffs.

## IV. THIS CASE IS PROCEDURALLY UNCOMPLICATED AND EXPEDITION WILL NOT PREJUDICE DEFENDANTS

Because this case is an administrative record review case, it involves few procedural steps. All that is required prior to decision is the filing of the record, dispositive cross motions, and replies and oral argument. The usual initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(B)(i) do not apply, no discovery is expected, and no trial to resolve disputed facts will be required.

The only burden expedition may impose on the Defendants is to quickly produce the pertinent record. But this task is simplified because all of NMFS' substantive work was undertaken in a recent period of less than a year, and principally by a handful of staffers. The burden is also limited by the fact that once NMFS informed EPA of its preliminary findings, in mid-summer 2008, EPA began compilation of a docket that already is available to the Court and the parties (and the public). *See* www.regulations.gov (search docket number EPA-HQ-OPP-2008-0654). The documents in that docket,

and NMFS' responses to them as embodied in the Biological Opinion, make up much of the record pertinent to the issues raised in this suit.

Finally, Plaintiffs' proposed schedule is sensitive to the unique staffing and scheduling difficulties that a Federal defendant may face in litigation. Plaintiffs' proposed schedule maintains the Federal Rule of Civil Procedure's extended sixty day deadline to answer, for example, but simply requires that the record – review of which by Defendants' counsel presumably is required in preparing an answer – be filed within the same period. Moreover, as noted above, much of the record already has been compiled by EPA. It also allows a realistic, four-week period for the preparation of dispositive briefs thereafter. Defendants will not be prejudiced by being held to such a schedule.

## V. CONCLUSION

For these reasons, Plaintiffs request that the Court grant their Motion to Expedite Disposition and approve the attached Proposed Scheduling Order.

|  |  |
|---|---|
| | Respectfully submitted, |
| |    /s/ *David E. Markert* |
| | David E. Markert  (Bar #17016) |
| | David B. Weinberg (*pro hac vice* pending) |
| Guy Relford, Esq. | Eric Andreas (*pro hac vice* pending) |
| Dow AgroSciences, LLC | P. Nicholas Peterson (*pro hac vice* pending) |
| 9330 Zionsville Road | Wiley Rein LLP |
| Indianapolis, IN 46268 | 1776 K Street, NW |
| | Washington, DC 20006 |
| Michael Grisham, Esq. | (202) 719-7000 |
| Dow AgroSciences, LLC | (202) 719-7049 (fax) |
| 9330 Zionsville Road | |
| Indianapolis, IN 46268 | *Attorneys for Plaintiffs DOW AGROSCIENCES LLC and MAKHTESHIM AGAN OF NORTH AMERICA, INC.* |
| *Of Counsel for DOW AGROSCIENCES LLC* | |
| | |
| |    /s/ *Deborah B. Baum* |
| Mark Hough, Esq. | Deborah B. Baum  (Bar #05694) |
| Makhteshim Agan of North America, Inc. | David Menotti (*pro hac vice* pending) |
| 4515 Falls of Neuse Road | Warren U. Lehrenbaum (admission pending) |
| Suite 300 | Pillsbury Winthrop Shaw Pittman LLP |
| Raleigh, NC 27609 | 2300 N Street, NW |
| | Washington, DC 20037 |
| *Of Counsel for MAKHTESHIM AGAN OF NORTH AMERICA, INC.* | (202) 663-8000 |
| | (202) 663-8007 (fax) |
| | |
| | *Attorneys for Plaintiff CHEMINVOA, INC. USA* |

April 1, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2009, the foregoing Motion to Expedite Disposition and Proposed Scheduling Order were served upon the following via first class mail:

Eric Holder
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW.
Washington, DC 20530

Office of U.S. Attorney for the District of Maryland
Attn: Civil Process Clerk
36 S. Charles Street 4th. Fl.
Baltimore, MD 21201

James W. Balsiger
National Marine Fisheries Service
1315 East-West Highway
Silver Spring, MD 20910

                                            */s/ David E. Markert*
                                            David E. Markert
                                            Wiley Rein LLP