**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | | |
|---|---|---|
| | ) | |
| DOW AGROSCIENCES LLC, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 8:09-cv-824-AW |
| | ) | |
| NATIONAL MARINE FISHERIES | ) | |
| SERVICE, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Dow AgroSciences LLC, Makhteshim Agan of North America, Inc., and Cheminova,

Inc. provide the following response in opposition to Defendants' Motion to Dismiss (Doc. #28) and

Memorandum in Support (Doc. #28-2).

**INTRODUCTION**

**LEGAL BACKGROUND**

The Endangered Species Act of 1973 ("ESA") requires the Secretary of the Interior to specify

species that are "threatened" or " endangered" and designate their "critical habitat." 16 U.S.C. § 1533.

It further requires each Federal agency to ensure that any action it authorizes, funds, or carries out is not

likely to jeopardize a listed species or adversely modify its critical habitat. *Id.* § 1536(a)(2). If an

agency determines that a proposed action may adversely affect such a species, it must formally consult

with the Fish and Wildlife Service ("FWS") or the National Marine Fisheries Service ("NMFS"). The

Service then must provide the agency with a written statement (known as a "Biological Opinion" or

"BiOp"). *Id.* § 1536(b)(3)(A). If the Service concludes that the proposed action will result in jeopardy

or adverse habitat modification, the BiOp is to describe reasonable and prudent alternatives ("RPAs")

that the Service believes will avoid that consequence. The Service may also issue an "Incidental Take

Statement" ("ITS"). Such a statement sets forth the conditions under which, even if a "taking" of the

species occurs, no penalties under the ESA can be assessed. *Id.* § 1536(b)(4).[1]

The action agency must then consider the BiOp. The agency must either implement the RPAs or

articulate and substantiate reasons for not doing so. *Bennett v. Spear*, 520 U.S. 154, 169 (1997). But the

BiOp has "a powerful coercive effect," *id.* at 169 (internal citation omitted), because the agency's

refusal to accept the Service's recommendations can be challenged in Court, and the agency and its

leadership face liability if the Court rejects its reasoning.[2] Private citizens face similar pressures,

because they too are subject to civil suit (including private injunctive action) and criminal prosecution in

the face of a "take" of a listed species that is not authorized by the ITS.[3]

**FACTUAL BACKGROUND**

On July 31, 2008, NMFS publicly released a draft BiOp relating to EPA's registrations of

chlorpyrifos, diazinon, and malathion pesticides and their effects on certain species of Pacific salmonids.

Compl. ¶ 36. Over the course of the next several months, Plaintiffs had several meetings with

representatives of NMFS and EPA regarding the draft BiOp. During those meetings, Plaintiffs and EPA

---

[1] "Take" is defined as actions that harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect individual members of an endangered species. 16 U.S.C. § 1532(19).

[2] "Any person" who knowingly "takes" an endangered or threatened species is subject to substantial civil and criminal penalties, including imprisonment. *Bennett v. Spear*, 520 U.S. 154, 170 (1997).

[3] Section 9 of the ESA and its implementing regulations prohibit any "person," which is defined to include private citizens, from taking any member of an endangered or threatened species. 16 U.S.C. § 1538(a)(1); 50 C.F.R. §§ 17.21, 17.31. Section 11 further imposes civil penalties and/or criminal prosecution on any person who knowingly takes an endangered or threatened species without a permit. 16 U.S.C. § 1540(a)-(b). An ITS acts like a permit, authorizing the taking of members of listed species notwithstanding the prohibition found in Section 9. *See Bennett v. Spear*, 520 U.S. 154, 170 (1997); *Ramsey v. Kantor*, 96 F.3d 434, 440-41 (9th Cir. 1996).

explained to NMFS the deficiences of the BiOp. *Id.* ¶¶ 39-42. Plaintiffs suggested changes to rectify

those deficiencies and provided to NMFS reams of scientific information on the effects of chlorpyrifos,

diazinon, and malathion on the listed species. NMFS had not previously considered this information.

*Id.* ¶ 41.

NMFS released a final BiOp on November 18, 2008. *Id.* ¶ 44. The final BiOp did not respond

to most of Plaintiffs' comments or to the information they provided NMFS. *Id.* However, it did

conclude that EPA's registration decisions concerning the pesticides at issue are likely to jeopardize the

continued existence of twenty-seven listed Pacific salmonids and are likely to destroy or adversely

modify critical habitats for twenty-five of those listed Pacific salmonids with designated critical habitat.

On the basis of this conclusion, NMFS issued RPAs and an Incidental Take Statement. The

BiOp required that the RPAs be fully implemented by EPA by November 18, 2009. *Id.* ¶ 45.

Implementation of most of the RPAs will require amendment of the registrations EPA has

granted to Plaintiffs (and their customers). *See id.* ¶¶ 45-46, 68-71. Absent voluntary agreement from

Plaintiffs, implementation will require EPA to initiate and pursue administrative hearing procedures and,

ultimately, issuance of a final administrative order. 7 U.S.C. § 136d. EPA could independently

implement the extensive, multi-state surface water monitoring program required by NMFS – which is

expressly a condition of the ITS – without requiring label amendments but, to the best of Plaintiffs'

knowledge, EPA has not even begun planning such a program.

Implementation of the RPAs would substantially reduce, if not eliminate, use of chlorpyrifos,

diazinon, and malathion in much of the Northwest, causing great injury to Plaintiffs. *See* Compl. ¶¶ 6-8.

However, EPA's failure to implement them would vitiate the protections offered to Plaintiffs and their

customers by the Incidental Take Statement.[4]  As more fully described at pages 12-13 below, this

dilemma already is injuring Plaintiffs.

Plaintiffs brought this action on April 1, 2009, pursuant to the Administrative Procedure

Act, 5 U.S.C. § 706(2)(A) ("APA").  Plaintiffs allege that the final BiOp was arbitrary and capricious

and failed to rely on the best scientific and commercial data available, as required by the ESA, and that

Defendants failed to follow their own procedural regulations governing the issuance of biological

opinions.

## STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), a Court

must accept as true all the factual allegations in the complaint.  *Leatherman v. Tarrant County Narcotics*

*Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  The Court may also consider evidence

outside the pleadings.  *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).  The moving party

may prevail "only if the material jurisdictional facts are not in dispute and the moving party is entitled to

prevail as a matter of law."  *Richmond, F. & P.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)

(citations omitted).

---

[4]  Many of the measures that EPA is required to implement by the Incidental Take Statement overlap with the RPAs identified in the BiOp.  For example, the RPAs require that EPA develop a monitoring program for off-channel habitats; impose label revisions that will mitigate effects on the salmonid species in question (*e.g.*, require a buffer of 500 feet from salmonid habitats for ground applications and a buffer of 1,000 feet from salmonid habitats for aerial applications); and mandate instructions for reporting fish kills on all chlorpyrifos, diazinon, and malathion labels (or alternatively in publicly-available documents cross-referenced on the labels).  The ITS similarly requires no-application buffers for Ozette Lake sockeye habitat and expressly requires that EPA "[m]inimize the amount and extent of incidental take from use of pesticide products containing chlorpyrifos, diazinon, and malathion by reducing the risk of chemicals reaching the water."  NMFS' Biological Opinion on EPA Registration of Pesticides Containing Chlorpyrifos, Diazinon, and Malathion, Ex. B to Defs.' Mem. at 401.  Because of this overlap, any failure by EPA to implement the RPAs likely would vitiate the protection offered by the ITS and expose Plaintiffs and their customers to liability for "take" under the ESA.

## ARGUMENT

I. **DIRECT SUPREME COURT PRECEDENT ESTABLISHES BOTH THAT THIS CASE IS PROPERLY BROUGHT IN THE DISTRICT COURT AND THAT IT IS RIPE**

The Court need look no further than *Bennett v. Spear*, *supra*, to confirm its jurisdiction over Plaintiffs' claims.

In *Bennett*, a unanimous Supreme Court held that BiOps of the type at issue here are final agency actions subject to judicial review under the APA. *Bennett*, 520 U.S. at 178. The Court reached this holding notwithstanding the Government's contention that "[j]udicial review of a biological opinion independent of any challenge to the action agency's [implementing] decision" would run afoul of the ripeness doctrine. Brief for the Respondents, *Bennett v. Spear*, (No. 95-813), 1996 WL 396714, at *34-*35. *Bennett* thus is directly on point.

A. ***Bennett v. Spear* Establishes That District Courts Have Jurisdiction over Judicial Challenges to Biological Opinions**

The *Bennett* decision is routinely cited by Federal courts as establishing the proposition that District Courts have jurisdiction over APA-based challenges to a BiOp. *See, e.g.*, *Miccosukee Tribe of Indians of Fla. v. United States*, No. 08-10799, 2009 U.S. App. LEXIS 9715, at *9-*10 (11th Cir. May 5, 2009) ("Biological opinions are final agency actions subject to judicial review under the Administrative Procedure Act.") (*citing Bennett*, 520 U.S. at 178)); *Ariz. Cattle Growers Ass'n v. FWS*, 273 F.3d 1229, 1235 (9th Cir. 2001) ("Final agency actions are reviewable by federal courts under section 704 of the [APA.] The issuance of a [BiOp] as well as an accompanying Incidental Take Statement are considered final agency actions." (*citing Bennett*, 520 U.S. at 178) (citations omitted)). In fact, the presumption of District Court jurisdiction over challenges to BiOps has become so entrenched since 1997 that courts rarely deem it necessary to address the issue in their opinions. *See, e.g.*, *Swan View Coal. v. Barbouletos*, No. 06-73, 2008 U.S. Dist. LEXIS 56677 (D. Mont. June 13, 2008)

(assuming jurisdiction over environmental plaintiffs' challenge under the APA to a BiOp); *Natural Res. Def. Council v. Kempthorne*, 506 F. Supp. 2d 322 (E.D. Cal. 2007) (same).

To fully understand the bearing *Bennett* has on the disposition of Defendants' Motion, it is useful to briefly review the Supreme Court's decision. At issue in *Bennett* was a BiOp issued by the FWS that related to a Federal irrigation project controlled by the Bureau of Reclamation. In that BiOp, the FWS concluded (as here) that the long-term operation of the project was likely to jeopardize the continued existence of certain endangered fish. *Bennett*, 520 U.S. at 157. Consequently, the FWS identified RPAs it believed would avoid jeopardy. These included the maintenance of minimum water levels on certain reservoirs. *Id.* at 159. The BiOp also included an Incidental Take Statement. *Id.*

After the Bureau of Reclamation had signaled its intention to comply with the BiOp, but prior to that implementation, two irrigation districts and two ranchers (the "*Bennett* plaintiffs") challenged the BiOp in Federal District Court. The *Bennett* plaintiffs asserted, among other things, that implementation of the RPAs would adversely affect their commercial well-being by substantially and unnecessarily reducing the quantity of available irrigation water. *Id.* at 160. They further asserted that the BiOp violated the Administrative Procedure Act's prohibition on arbitrary and capricious agency action. *Id.*

As in this case, the Government filed a motion to dismiss the *Bennett* plaintiffs' case on the ground that the Court lacked jurisdiction. Pursuant to that motion, the District Court dismissed the complaint and the Court of Appeals for the Ninth Circuit affirmed. *Bennett v. Plenert*, 63 F.3d 915 (9th Cir. 1999). The *Bennett* plaintiffs' appealed that decision to the Supreme Court.

A central theme of the Government's argument to the Supreme Court, seeking to uphold the dismissal, was that the *Bennett* plaintiffs' claims were not reviewable because BiOps are not final for purposes of judicial review until they are relied upon by an action agency. Brief for the Respondents,

*Bennett v. Spear*, (No. 95-813), 1996 WL 396714, at *34-*35. As here, the Government argued that

BiOps could only be challenged in a proceeding attacking the action agency's reliance upon the opinion.

*See id.*, at *46-*49.

In a unanimous decision, the Supreme Court rejected the Government's arguments and reversed.

The Court found that the BiOp at issue exhibited all the hallmarks of a final agency action: it marked

the consummation of the FWS' decision-making process, "alter[ed] the legal regime to which [the

Bureau of Reclamation was] subject," and had "direct and appreciable legal consequences." *Bennett*,

520 U.S. at 178. These facts, plus the *Bennett* plaintiffs' allegations that they would suffer economic

harm because of the FWS' deficient BiOp, were found sufficient by the Court to support review under

the APA in District Court. *Id.* at 179.

## B. This Case is Indistinguishable from *Bennett v. Spear*

In all relevant respects, the facts and posture of this case and *Bennett* are identical. As in

*Bennett*, this case concerns a challenge to a BiOp which concludes that the continued operation of a

long-term Federal project will likely jeopardize the existence of endangered fish. Also as in *Bennett*,

Plaintiffs here are private entities who allege they will be economically harmed if the RPAs identified in

the BiOp are implemented and the accompanying Incidental Take Statement considered lawful. Finally,

both cases involve a jurisdictional challenge brought at the pleadings stage.[5]

As noted above, there has been little litigation of the issue of District Court jurisdiction to

consider BiOps since *Bennett* was decided. Indeed, in post-*Bennett* cases, jurisdictional defenses raised

by the Government implicitly have conceded that jurisdiction does exist when BiOps like the one here

---

[5] Although not critical to resolving the current jurisdictional dispute, it also merits note that the substantive legal issues
presented in the current case and *Bennett* are also very similar. For example, in *Bennett* the plaintiffs brought a claim under
the APA that the BiOp at issue failed to comply with the ESA's requirement for use of the best scientific and commercial
data available. *Bennett*, 520 U.S. at 176. Plaintiffs make the same claim here. Compl. ¶¶ 62-66.

are at issue. For example, in *Pacific Coast Federation of Fishermen's Associations v. NMFS*, 482 F. Supp. 2d 1248 (W.D. Wash. 2007), the Government argued that the Court did not have jurisdiction because the BiOps challenged by the plaintiffs were not accompanied by an authorization for "take." According to the Government, without an accompanying authorization for "take," a BiOp by itself has no legal consequences and is therefore unreviewable under the APA. *Id.* at 1263-64. Implicitly, therefore, by the Government's own logic, BiOps that do authorize "take," like the one at issue in the present case, are reviewable by District Courts under the APA. *See also Cascadia Wildlands Project v. FWS*, 219 F. Supp. 2d 1142, 1148 (D. Ore. 2005) ("Here, the FWS seeks to distinguish *Bennett* and [*Pacific Coast Federation of Fishermen's Associations, Inc. v. NMFS*, 265 F.3d 1028 (9th Cir. 2001)] on the ground that [the BiOp] did not authorize a take, and therefore did not have any legal consequences to the Forest Service.").

In view of the similarities between this case and *Bennett*, there is no question that *Bennett* is directly on point, and Defendants' Motion should be denied.

**C.      Any Effort By The Government To Distinguish *Bennett v. Spear* Should Be Rejected**

Notwithstanding the foregoing, Plaintiffs anticipate that Defendants will attempt to distinguish *Bennett* on at least three grounds.

First, Defendants may argue, as they did in their initial brief, that jurisdiction does not exist here because Plaintiffs' claims are not ripe, and assert that the ripeness issue was not resolved by *Bennett*. In fact, however, the ripeness argument was rejected in *Bennett*.

In *Bennett*, the Government contended that the plaintiffs' claims were not reviewable because BiOps are not final agency actions until they are relied upon by an action agency. In support of this premise, the Government cited "pragmatic considerations" and the ripeness doctrine that embodied them: "Judicial review of a biological opinion independent of any challenge to the action agency's

decision would cause the disruption and inefficiency that ripeness principles are intended to prevent."

Brief for the Respondents, *Bennett v. Spear*, 520 U.S. 154 (1997) (No. 95-813), 1996 WL 396714, at

*34-*35. The Government further contended that a deficient BiOp could be challenged only in a

proceeding attacking the action agency's reliance on that BiOp. *See id.*, at *46-*49.

At oral argument, the Justices directed many of their questions to counsel for the *Bennett*

plaintiffs to the issue of ripeness:

> QUESTION: The problem that's bothering me -- maybe I'll set it
> all out -- is that suppose I think this isn't ripe, this case. That's the
> problem. It isn't ripe. There was a [biological opinion] that you say was
> not properly prepared. The [biological opinion] was to go to the Secretary
> [of the Interior]. When the Secretary gets it, he might act, he might not
> act. If the Secretary in fact says the levels of the lake should be higher,
> your clients are hurt. If the Secretary says they shouldn't be higher and
> ignores the report or whatever, your clients suffered no harm.
>
> So, it sounds to me as if this isn't final agency action. Well, when
> it is final and your client is hurt, you have a case and you bring it.
>
> * * * * *
>
> QUESTION: . . . What you are suing to complain about is that the
> action of the [biological opinion] sending is unlawful.
>
> And therefore, I wondered if it is ripe in the sense that your
> complaint does not attack the final agency action, namely, the action of the
> Bureau of Reclamation which would lower or raise or do something with
> the water.

Transcript of Oral Argument, *Bennett v. Spear*, 520 U.S. 154 (1997) (No. 95-813), 1996 U.S. Trans.

LEXIS 55, at *6-*7, *12.

There thus is no doubt that the Supreme Court considered the Government's ripeness arguments

in *Bennett*, and no doubt that the Court rejected them. The Court simply viewed the finality and ripeness

issues as related, if not inseparable. The fact that the Court did not use the word "ripeness" in

addressing finality in the *Bennett* decision is irrelevant; inherent in the Court's holding that BiOps

satisfy the APA's requirement for "final agency action" is the holding that BiOps also are ripe for review.

Second, Defendants may try to distinguish the current case from *Bennett* by arguing that at the time the complaint was filed in *Bennett*, the action agency had notified the FWS that it intended to operate in compliance with the BiOp, whereas here EPA has not yet decided its course of action. However, a fair reading of the *Bennett* decision offers no basis for such a distinction. The *Bennett* Court's holding that the plaintiffs had suffered a cognizable injury caused by a final agency action (*i.e.*, the BiOp) was not premised on the fact that the action agency had indicated it would comply with the BiOp. Rather, it was based on the legal consequences that flowed from the BiOp, namely the BiOp's coercive effect. *See Bennett*, 520 U.S. at 168-70 (noting that while action agencies are technically free to disregard the terms and conditions of a BiOp's ITS, they rarely do because failures to comply with an ITS carry the threat of substantial civil and criminal penalties).[6]

The post-*Bennett* jurisprudence has consistently reaffirmed that, when determining jurisdiction, a BiOp's legal consequences predominate over the action agency's position on compliance. *See, e.g., Ctr. for Biological Diversity v. FWS*, 450 F.3d 930, 940-41 (9th Cir. 2006) (rejecting contention that plaintiffs' claim concerning a mining project on public land was not reviewable because the company awarded the mining contract had not received approval for all required permits); *Cascadia Wildlands Project*, 219 F. Supp. 2d at 1148 (confirming jurisdiction over a challenge to a "no jeopardy" BiOp because the BiOp's absence of an Incidental Take Statement raised the potential of liability under Section 9 of the ESA and thus had an appreciable legal consequence); *P'ship for a Sustainable Future, Inc. v. FWS*, No. 02-414, 2002 WL 33883548, at *3 (M.D. Fla. July 12, 2002) (rejecting the argument

---

[6] Significantly, that impact would be felt by the action agency, but a suit nonetheless could be maintained by affected private parties.

that no legal consequences flowed from the BiOp at issue until the Army Corps of Engineers issued a fill

permit required by the Federal Clean Water Act).

Finally, Defendants may seek to distinguish *Bennett* on the ground it is a standing case, and they

have not challenged Plaintiffs' standing. This argument would suffer from the same flaw as the first

argument addressed above. As other courts have observed, ripeness often overlaps with standing, "most

notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical."

*Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006); *see also Warth v.*

*Seldin*, 422 U.S. 490, 499 n. 10 (1975) ("The standing question thus bears close affinity to questions of

ripeness – whether the harm asserted has matured sufficiently to warrant judicial intervention . . . .").

Because the thrust of Defendants' argument is that Plaintiffs' claims are unripe in that they allege a

hypothetical harm, the standing analysis in *Bennett* should guide this Court's disposition of the instant

Motion.

## II.     EVEN ABSENT *BENNETT V. SPEAR*, DEFENDANTS' RIPENESS ARGUMENT WOULD BE WRONG

Even if *Bennett* did not directly control, which it does, Plaintiffs' complaint would be ripe for

consideration under the two prong test applied by the Fourth Circuit in non-ESA contexts.[7]

The first prong is whether the claim is fit for judicial review. A claim is deemed fit for review

where "the issues to be considered are purely legal ones and where the agency rule or action giving rise

to the controversy is final and not dependent upon future uncertainties or intervening agency rulings."

*Charter Fed. Sav. Bank v. Office of Thrift Supervision,* 976 F.3d 203, 208 (4th Cir. 1992) (citing *Abbott*

*Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). This is the case here for three reasons: 1) because

---

[7] The questions a District Court must ask under this test are "(1) are the issues fit for judicial review and (2) will hardship fall to the parties upon withholding court consideration?" *Arch Mineral Corp. v. Babbitt*, 104 F.3d 660, 665 (4th Cir. 1997) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

"[w]hether an agency decision is arbitrary and capricious is a purely legal question"[8] that is "presumptively reviewable,"[9] and Plaintiffs allege, as Defendants admit, arbitrary and capricious agency action;[10] 2) because NMFS' role in the ESA consultation process is concluded;[11] and 3) because a person "who is injured by a failure to comply with [a statutory] procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 737 (1998).[12] The release of the BiOp without following the required procedures as alleged by Plaintiffs thus created an injury that is fit for review.[13]

The second prong of the Fourth Circuit's traditional ripeness test asks whether the plaintiffs will suffer hardship if review is withheld. Hardship inheres in legal harms such as being "force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences." *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. Tex. 2007) (citing *Ohio Forestry Ass'n*, 523 U.S. at 734).[14] Such is the case

---

[8] *Nevada v. United States Dept. of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006).

[9] *Den-Mat Corp. v. United States*, No. MJG-92-444, 1992 WL 208962, at *3 (D. Md. Aug. 17, 1992) (citations omitted).

[10] Defs.' Mem. at 12.

[11] See 50 C.F.R. § 402.14(1)(1). The BiOp is not subject to further uncertainties or administrative review. It presents, in final form, NMFS' expert opinion as to whether EPA's registration/reregistration of chlorpyrifos, diazinon and malathion will cause jeopardy to certain species of salmonids. Compl. ¶ 45.

The fact that consultation may be reinitiated at some point in the future does not mean that a Service's decision is any less final. Reinitiation is only authorized when (1) the extent of take specified in the ITS is exceeded; (2) new information reveals effects of the action that may affect listed species or designated critical habitat in a manner or to an extent not previously considered in the biological opinion; (3) the identified agency action is subsequently modified in a manner or to an extent not previously considered in the biological opinion; or (4) a new species is listed or critical habitat designated that may be affected by the identified action. 50 C.F.R. § 402.16.

[12] See also *Sierra Club v. DOE*, 287 F.3d 1256, 1263-64 (10th Cir. 2002); *Ky. Heartwood, Inc. v. Worthington*, 20 F. Supp. 2d 1076, 1090 (E.D. Ky. 1998).

[13] These errors include failing to discuss the basis of its draft Biological Opinion with Plaintiffs, not providing Plaintiffs with a timely opportunity to comment or submit additional data, not seeking Plaintiffs' expertise in drafting RPAs, and not responding to Plaintiffs' comments in the Biological Opinion or in any other adequate document. Compl. ¶¶ 38-42, 73-75.

[14] See also *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 390 (4th Cir. 2001).

here. As the attached affidavits of Messrs. Gur, Segovia, and Petersen confirm, the release of the BiOp is having an immediate impact on Plaintiffs' business and is requiring that decisions be made now regarding production schedules for the upcoming season, and economic injury already is being felt. Gur Aff. ¶¶ 5-6; Segovia Aff. ¶¶ 5-6; Petersen Aff. ¶¶ 5-6.[15]

## III.    FIFRA'S JUDICIAL REVIEW PROVISIONS ARE IRRELEVANT TO THIS CASE

Defendants also argue that even if this case is ripe (which of course it is), it can only be heard in the Court of Appeals and only in the context of a challenge to an EPA order cancelling Plaintiffs' pesticide registrations under the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. §§ 136-136y ("FIFRA"). Defs.' Mem. at 16. As discussed above, *Bennett* provides sufficient precedent to demonstrate the irrelevance of this argument. Even if it did not, the statutory provision and case law Defendants rely upon are unavailing.

Notwithstanding the fact that NMFS, not EPA, is the defendant agency in this action, Defendants rely on FIFRA Section 16(b), 7 U.S.C. § 136n(b), as the foundation of their argument. That section provides for exclusive jurisdiction in the Courts of Appeals where there has been an "order issued" by the EPA – but not any other agency – following a public hearing. *Id*.[16]

Section 16(b)'s exclusive jurisdiction provision is not triggered here because Plaintiffs do not allege, and there has not been, any "order issued" by EPA. This simple fact distinguishes this case from

---

[15] Defendants thus are incorrect that there is merely a "possible" financial loss here. Defs.' Mem. at 15.

Moreover, under controlling Fourth Circuit precedent, simply the possibility of an imminent economic harm would satisfy the hardship prong of the ripeness doctrine. *See, e.g., Arch Mineral Corp. v. Babbitt*, 104 F.3d 660 (4th Cir. 1997); *Fort Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119 (4th Cir. 1977). Here, there is much more than a mere possibility of harm: Plaintiffs' sales of their products are being impacted now. Gur Aff. ¶ 4; Segovia Aff. ¶ 4; Petersen Aff. ¶ 7.

[16] FIFRA Section 16(b) states, in pertinent part: "In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States Court of Appeals for the circuit wherein such person resides or has a place of business, within 60 days after the entry of such order, a petition praying that the order be set aside in whole or in part."

those cases that Defendants rely upon, all of which involve a final order.  Defs.' Mem. at 22-23.[17]

In an effort to circumvent these facts, Defendants look to *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*").  That case held that where a statute commits review of final agency action to a Court of Appeals, that Court has exclusive jurisdiction to hear cases alleging agency inaction where the relief sought might affect the Court's future statutory power of review.  *Id*. at 75.  Defendants now assert that because a FIFRA cancellation order *may* be issued sometime in the future, a Court of Appeals has exclusive jurisdiction.  Defs.' Mem. at 18.

But *TRAC* is not applicable here.  First and foremost, its holding has never been adopted by this

---

[17]  In *City of Tacoma v. NMFS*, 383 F. Supp. 2d 89, 92 (D.D.C. 2005) ("*City of Tacoma 1*"), the Court faced a challenge to a BiOp that related to a final hydroelectric licensing order that had been granted by the Federal Energy Regulatory Commission ("FERC").  *Id.* at 90.  That is, there was a final licensing order.  As required by FERC's organic statute, plaintiffs brought a challenge to the issuance of the license in the Court of Appeals.  *Id.* at 91.  All that the Court held (that is pertinent here) is that the challenge to the BiOp should also be brought in the Court of Appeals, not that it could not have been brought earlier.  *Id.* at 93.

*City of Tacoma v. FERC*, 460 F.3d 53, 76 (D.C. Cir. 2006), is a consolidated action in the D.C. Circuit that follows onto *City of Tacoma 1*.  The key fact that an order had been issued to trigger the appellate court's jurisdiction is the same as in the earlier decision.

*American Bird Conservancy v. FCC*, 545 F.3d 1190, 1194 (9th Cir. 2008) presented no challenge to a BiOp.  Instead, the case dealt with the alleged failure of the Federal Communications Commission ("FCC") to enter into consultation with the FWS under Section 7 of the ESA prior to finally granting licenses for cell phone towers in Hawaii.  *Id.* at 1191.  Challenges to FCC licensing orders are only challengeable in the Courts of Appeals, and the issue facing the Ninth Circuit was whether the alleged failure to consult should have been brought there as well.  *Id.* at 1193.  In light of the finality of the FCC orders and the mandate of the Communications Act that orders be reviewed in the Courts of Appeals, the Court found consideration of the BiOp challenge in that court appropriate as well.  *Id.*

*Defenders of Wildlife v. EPA*, 420 F.3d 946, 955 (9th Cir. 2005), *rev'd sub nom. National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007), dealt with a challenge to a final EPA order transferring state water pollution permitting control to the State of Arizona.  *Id.* at 950.  Defendants assert that the Ninth Circuit held that the District Court "lacked jurisdiction over [an] ESA challenge to a Biological Opinion on the effects of an EPA transfer."  Defs.' Mem. at 22-23.  That is not correct.  The question before the Circuit Court was whether it had jurisdiction to review the BiOp in conjunction with a transfer decision, when that decision relied on the findings in the BiOp.  *Defenders of Wildlife*, 420 F.3d at 956.  The Ninth Circuit held that it did have jurisdiction, but not that the District Court lacked jurisdiction.  *Id.*  (In any event, this is just another example where, unlike the present case, there was a final order that was being challenged.)

*Northwest Resource Information Center, Inc. v. NMFS*, 25 F.3d 872, 874-75 (9th Cir. 1994) involved the defendants' alleged failure to consult under the ESA regarding a final water management order pertaining to hydroelectric power generation on the Columbia River.  *Id*. at 873-74.  No biological opinion had been issued, and there was a final order that was immediately appealable to the Ninth Circuit under the Northwest Power Act.  *Id*. at 874.

Court or the Fourth Circuit.  This Court thus is not bound by it.  *See, e.g.*, *United States v. Daly*, 883

F.2d 313, 317 (4th Cir. 1989); *Anstey v. Painter*, No. 5:99-0120, 2000 WL 34012352, at *2 (S.D.W.Va.

Mar. 16, 2000).

Furthermore, the *TRAC* analysis is inapplicable to the facts presented here.  Under *TRAC*, the

controlling inquiry is whether the claim brought by plaintiffs falls "directly within" the exclusive

jurisdictional provision at issue requiring review be in a Court of Appeals.  *Am. Farm Bureau v. EPA*,

121 F. Supp. 2d 84, 93 (D.D.C. 2000); *Shengli Zhang v. Napolitano*, 604 F. Supp. 2d 77 (D.D.C.

2009).[18]  This obviously is not the case here, where Plaintiffs challenge not an EPA decision under

FIFRA, but a NMFS decision under the Endangered Species Act.

**CONCLUSION**

For the reasons set forth above, the Court should deny Defendants' Motion to Dismiss.

---

[18]  In *American Farm Bureau*, the Court analyzed the *TRAC* doctrine in the context of Supreme Court and other case law dealing with exclusive jurisdictional provisions.  *Am. Farm Bureau*, 121 F. Supp. 2d at 92.  It noted that the Supreme Court has held that a provision which refers expressly to review of "final orders" does not encompass a claim under an exclusive review provision simply because the claim is related to or may affect a "final order," but that it applies only to those claims "literally" falling within the provision's scope.  *Id.* (*citing California ex rel. Van de Kamp v. Reilly*, 750 F. Supp. 433, 436 (E.D. Cal. 1990) (*citing Cheng Fan Kwok v. INS*, 392 U.S. 206, 210-12 (1968))).  In determining whether *TRAC* applied, the District Court reviewed plaintiffs' claims in the complaint to determine if they were directly covered by the exclusive jurisdictional provision.  The Court held that it – not the Court of Appeals – had jurisdiction over those claims that did not fall verbatim into the statute's review provision.  *Id.* at 94.

In *Shengli Zhang v. Napolitano*, the Court held that because plaintiff's claim seeking to compel agency action was "not expressly listed" in the exclusive review provision, it was not subject to *TRAC*:

> In *TRAC*, the Court of Appeals held that the Court of Appeals' jurisdiction is exclusive "over claims that affect [its] future statutory review authority" where "Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power." Although it is apparent that Zhang's ultimate goal is to prevent the Attorney General from executing the removal order upheld by the First Circuit, his present claim seeks only to compel the USCIS to act on his asylum application, and the defendants provide no authority establishing that a claim compelling the USCIS' to adjudicate an asylum application is within the class of removal-related claims under § 1252(g). Accordingly, the defendants have not shown that jurisdiction over Zhang's claim is barred by § 1252(g).

*Shengli Zhang v. Napolitano*, 604 F. Supp. 2d at 80 (citations omitted).

Respectfully submitted,

Joseph Alberts, Esq.
Dow AgroSciences, LLC
9330 Zionsville Road
Indianapolis, IN 46268

Michael Grisham, Esq.
Dow AgroSciences, LLC
9330 Zionsville Road
Indianapolis, IN 46268

*Of Counsel for DOW AGROSCIENCES LLC*

Mark Hough, Esq.
Makhteshim Agan of North America, Inc.
4515 Falls of Neuse Road
Suite 300
Raleigh, NC 27609

*Of Counsel for MAKHTESHIM AGAN OF NORTH AMERICA, INC.*

    /s/ *David B. Weinberg*
David E. Markert  (Bar #17016)
David B. Weinberg (*pro hac vice*)
Eric Andreas (*pro hac vice*)
P. Nicholas Peterson (*pro hac vice*)
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
(202) 719-7049 (fax)

*Attorneys for Plaintiffs DOW AGROSCIENCES LLC and MAKHTESHIM AGAN OF NORTH AMERICA, INC.*

    /s/ *Warren U. Lehrenbaum*
Warren U. Lehrenbaum (Bar #28924)
Deborah B. Baum (Bar #05694)
David Menotti (*pro hac vice*)
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, NW
Washington, DC 20037
(202) 663-8000
(202) 663-8007 (fax)

*Attorneys for Plaintiff CHEMINOVA, INC. USA*

June 18, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2009, the foregoing Response in Opposition to Defendants'

Motion to Dismiss was served upon the following via the Court's ECF system:

Meredith Lisa Flax
U.S. Department of Justice
ENRD Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044
meredith.flax@usdoj.gov


                                                   _____*/s/ David E. Markert*_____
                                                   David E. Markert
                                                   Wiley Rein LLP


13011953.2