IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOW AGROSCIENCES LLC, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 09-CV-824-AW |
| | ) | |
| NATIONAL MARINE FISHERIES SERVICE, <u>et al.</u>, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| _____ | ) | |

## <u>REPLY IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS</u>

Federal Defendants, National Marine Fisheries Service, and James W. Balsiger, in his official capacity as Acting Assistant Administrator of the National Marine Fisheries Service (collectively "NMFS"), submit the following reply in support of their motion to dismiss (Doc. No. 28).  As NMFS demonstrated in our opening brief, this Court lacks subject matter jurisdiction over this case both because Plaintiffs' claims are not ripe and because, whether Plaintiffs' claims are ripe or not, the courts of appeals have exclusive jurisdiction over their claims.  Plaintiffs' response fails to rebut this showing.  Indeed, Plaintiffs' concession that the Environmental Protection Agency ("EPA") has not issued a final order pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") only highlights the fact that this case is not ripe, and that if it becomes so, jurisdiction lies exclusively in the courts of appeals.  Since Plaintiffs have failed to meet their burden to demonstrate that the Court has jurisdiction, their case should be dismissed.  <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 103 (1998).

//

//

# ARGUMENT

## I. NEITHER BENNETT V. SPEAR NOR PLAINTIFFS' ARGUMENTS UNDER THE TWO-PART ABBOTT LABS TEST UNDERMINE THAT PLAINTIFFS' CLAIMS ARE NOT RIPE.

### A. Bennett v. Spear Does Not Serve as Precedent on Ripeness Grounds.

Even though the Supreme Court in Bennett v. Spear, 520 U.S. 154 (1997) ("Bennett"), never once mentioned the word ripeness or the two-part test for ripeness set forth in Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967) ("Abbott Labs"), Plaintiffs argue that Bennett serves as precedent here for the proposition that all biological opinions ("BiOp") are ripe. Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss (Doc. No. 30) ("Pls' Opp") at 5 ("Direct Supreme Court Precedent Establishes . . . That This Case . . . Is Ripe"). While Bennett did hold that the biological opinion in that case was a final agency action, the fact that an action is a "final agency action" as defined by the Administrative Procedure Act, 5 U.S.C. § 704, does not equate to the action being ripe. Furthermore, to the extent that Bennett implicitly opined on ripeness in that case, which NMFS does not concede, the opinion is not even persuasive here because the facts in Bennett are distinguishable.

A case can serve as precedent on an issue only if the court renders a decision on that issue. Texas v. Cobb, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); see also 20 Am. Jur. 2d Courts § 134 ("For a case to be stare decisis on a particular point of law, that issue must have been raised in the action decided by the court, and its decision made part of the opinion of the case; accordingly, a case is not binding precedent on a point of law where the holding is only implicit or assumed in the decision but is not announced.").

Despite this black letter law on what constitutes precedent, Plaintiffs argue that <u>Bennett</u> is precedent here on ripeness based on the transcript of the oral argument and on the arguments the government made in its briefs.  Pls' Opp at 8-10.  However, the fact that the parties may have raised the issue to the court does not make a decision precedential where the court does not address the issue. <u>Cooper Indus., Inc. v. Aviall Servs., Inc.</u>, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (quoting <u>Webster v. Fall</u>, 266 U.S. 507, 511 (1925)).  Moreover, even if Plaintiffs were correct that the <u>Bennett</u> Court assumed that case was ripe, a court's assumption that it had jurisdiction in a previous decision does not convert the decision into precedent on that jurisdictional issue.[1]  <u>American Portland Cement Alliance v. EPA</u>, 101 F.3d 772, 776 (D.C. Cir. 1996) ("jurisdictional issues that were assumed but never expressly decided in prior opinions do not thereby become precedents").

NMFS recognizes that <u>Bennett</u> did hold that the biological opinion in that case was a "final agency action."  However, simply because a BiOp is a final agency action does not automatically mean

---

[1] Similarly, contrary to Plaintiffs' argument, a party cannot concede, implicitly or otherwise, that a court has jurisdiction.  Pls' Opp at 8.  Regardless of what position the Government takes, or even if the Government takes no position at all, the Court has an independent obligation to assure itself of its jurisdiction.  <u>Citizens for a Better Env't</u>, 523 U.S. at 94 (explaining that courts must determine whether a plaintiff has properly invoked the court's jurisdiction); <u>Stevens v. County of Albemarle, VA</u>, 524 F.3d 485, 490 (4th Cir. 2008) ("As a court of limited jurisdiction, we have 'a special obligation to satisfy [our]self not only of [our] own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.'") (quoting <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541 (1986)).

it is also ripe.[2] <u>West Virginia Highlands Conservancy, Inc. v. Babbitt</u>, 161 F.3d 797, 800 (4th Cir. 1998) ("even when agency action is final and the issues presented are purely legal, a court may nonetheless properly deem a matter unfit for resolution if the court determines that resolution of the dispute is likely to prove unnecessary.") (citation and internal quotations omitted); <u>Sprint v. FCC</u>, 331 F.3d 952, 956 (D.C. Cir. 2003) ("Final agency action pursuant to the Administrative Procedure Act ("APA") is a crucial prerequisite to ripeness . . . [h]owever, issues still may not be fit for review where the agency retains considerable discretion to apply the new rule on a case-by-case basis, particularly where there is a complex statutory scheme or there are other difficult legal issues that are implicated by the agency action") (citation and internal quotation omitted). In short, while finality and ripeness may overlap, they are analytically distinct doctrines. <u>John Doe, Inc. v. DEA</u>, 484 F.3d 561, 567 (D.C. Cir. 2007). As such, a decision that solely addresses finality and does not even mention ripeness does not *a fortiori* represent binding precedent on ripeness.

Indeed the only arguably relevant post-<u>Bennett</u> case Plaintiffs cite confirms that courts must still determine whether their review of a BiOp is ripe despite a determination that the BiOp is a final agency action. Pls' Opp at 10-11 (citing <u>Center for Biological Diversity v. FWS</u>, 450 F.3d 930 (9th Cir. 2006)).[3] While the Ninth Circuit held that the BiOp in that case was ripe for review, that case is

---

[2] The cases Plaintiffs cite to argue that district courts have jurisdiction to review challenges to BiOps are therefore unremarkable, because they say nothing more than that a challenge to a BiOp is a final agency action. Pls' Opp at 5-6.

[3] Plaintiffs also cite to <u>Cascadia Wildlands Project v. FWS</u>, 219 F. Supp. 2d 1142 (D. Or. 2002) and <u>Partnership for a Sustainable Future, Inc. v. FWS</u>, No. 02-414, 2002 WL 33883548 (M.D. Fla. July 12, 2002). Neither case is on point here, however. <u>Cascadia Wildlands Project</u> involved the issue of whether a BiOp without an incidental take is final agency action, and did not discuss ripeness at all. Similarly, while the court in <u>Partnership for a Sustainable Future</u> used the term ripeness, it is clear from

factually distinguishable from this case. First, unlike the plaintiffs in Center for Biological Diversity, Plaintiffs here are arguing that delaying review will cause them economic hardship, not that it will cause them hardship because there will be take of listed salmonid species. Compare Center for Biological Diversity, 450 F.3d at 940 with Pls' Opp at 13. Second, given that the BiOp challenged in this case made a jeopardy call, not a no jeopardy call as in Center for Biological Diversity, and that EPA has not even determined what course of action it intends to take on the BiOp yet, immediate judicial review may interfere with further administrative action in this case. Memorandum in Support of Federal Defendants' Motion to Dismiss (Doc. No. 28-2) ("MTD") at 13-14. Similarly, further factual development is likely to assist the Court here in resolving the legal question at issue in this case. Id.; see Center for Biological Diversity, 450 F.3d at 941. In sum, rather than support Plaintiffs' arguments here, Center for Biological Diversity underscores that courts must still analyze whether a challenge to a BiOp is ripe after Bennett and that such analysis is based on the facts of the particular case, which here demonstrate that this case is not ripe.

**B.     Bennett is Distinguishable.**

Since Bennett is not precedential on ripeness, it at best could serve as persuasive authority here. However, a court's analysis of ripeness depends on the particular facts of the case. Because the facts of this case are distinguishable from the facts in Bennett, it is not even persuasive here.

The most crucial difference between the facts in Bennett and those here is that the plaintiffs in Bennett had alleged that the action agency would comply with the reasonable and prudent alternative

---

the decision that the court was analyzing only whether the BiOp in that case was final agency action. 2002 WL 33883548, at *3. Specifically, the court set out the two part test for final agency action from Bennett and determined that legal consequences flowed from FWS's issuance of the BiOp. Id.

("RPA") presented in the BiOp in that case. Bennett, 520 U.S. at 167 ("Petitioners allege . . . that the Bureau 'will abide by the restrictions imposed by the Biological Opinion,' App. to Pet. for Cert. 32"). Here, Plaintiffs have not made such an allegation, nor could they, since EPA has not even announced how it intends to proceed. As explained previously, there are three possible courses EPA could take here, any of which could result in judicial review being unnecessary, whereas in Bennett, those possibilities had already been foreclosed. MTD at 13-14. Moreover, the BiOp here, unlike the BiOp in Bennett, expressly gave the action agency a year to make its decision on whether to implement the RPA. See MTD at 9, 13. Finally, as will be discussed in detail below, infra sections I.C.2. and I.C.3., Plaintiffs have not demonstrated hardship here sufficient for ripeness purposes, whereas the Bennett court found the allegations made by the plaintiffs in that case sufficient to demonstrate an injury-in-fact for standing purposes. See National Treasury Employees Union v. United States, 101 F.3d 1423, 1427-28 (D.C. Cir. 1996) (discussing the differences between ripeness and standing); Consolidation Coal Co. v. Federal Mine Safety & Health Review Comm'n, 824 F.2d 1071, 1090 n.7 (D.C. Cir. 1987) (same).

    **C.**    **Plaintiffs Have Not Demonstrated that this Case is Fit for Judicial Decision or That They Will Suffer Hardship If This Court Withholds Review, as Required by Abbott Labs.**

In addition to being wrong about Bennett, their alternative argument that they have met the two-part test enunciated in Abbott Labs is also wrong. Plaintiffs fail to address the arguments NMFS made demonstrating that this case is not fit for judicial decision. MTD at 12-14. Instead, they list three reasons why they believe the case is fit for judicial decision. Pls' Opp at 11-12. However, none of these alleged reasons is persuasive. As for the hardship prong of the ripeness test, Plaintiffs have abandoned the arguments they made in their motion to expedite regarding potential "take" liability and being

subject to administrative proceedings. Plaintiffs' Motion to Expedite (Doc. No. 4) at 3-6. They focus instead on alleged economic hardship and allegedly being forced to modify their behavior to avoid future adverse consequences. Pls' Opp at 12. However, Plaintiffs' affidavits fail to demonstrate that they will suffer hardship of the sort the courts have found suffices for ripeness purposes.

      1.      **Plaintiffs Have Failed to Demonstrate That Their Case Is Fit For Judicial Review.**

Plaintiffs' three arguments as to why they believe this case is fit for judicial decision are without merit. Plaintiffs first argue that because they are alleging arbitrary and capricious agency action, their claims are presumptively reviewable. Pls' Opp at 11-12. NMFS has acknowledged that Plaintiffs' claims "may be purely legal in the sense that they allege that NMFS' action is arbitrary and capricious." MTD at 12. However, Plaintiffs fail to address the fact, demonstrated by NMFS, that having purely legal claims does not automatically equate to the case being fit for judicial decision for ripeness purposes. Id. at 12-13 (citing two D.C. Circuit cases and one Fourth Circuit cases holding that a court may properly deem a case unfit for judicial resolution even where the issues presented are purely legal).

Plaintiffs next argue that "NMFS' role in the ESA consultation process is concluded." Pls' Opp at 12. This is essentially saying again that if a BiOp is a final agency action that it is presumptively ripe. We have already refuted this argument, and Plaintiffs have failed to distinguish the cases in which courts have held that a final agency action alone is not enough to demonstrate ripeness. MTD at 12-13. Furthermore, the only arguably relevant case Plaintiffs cite actually supports the conclusion that the completion of a BiOp does not make a case automatically ripe. Pls' Opp at 10 (citing Center for Biological Diversity). Rather, even where there is a BiOp, the court must still analyze whether the case

is ripe based on the particular facts of that case. In this case, in contrast to <u>Center for Biological</u> <u>Diversity</u>, the facts demonstrate that Plaintiffs' claims are not ripe.  MTD at 11-16.

Plaintiffs' last argument is that the case is fit for judicial decision "because a person 'who is injured by a failure to comply with [a statutory] procedure may complain of that failure at the time the failure takes place, for the claim can never get riper."  Pls' Opp at 12 (citing <u>Ohio Forestry Ass'n, Inc. v.</u> <u>Sierra Club</u>, 523 U.S. 726, 737 (1998)).  While Plaintiffs have alleged a procedural violation of ESA section 7, this fact does not demonstrate that Plaintiffs' claims are fit for judicial decision.  In contrast to <u>Ohio Forestry</u> which pertained to the ripeness of purely procedural claims brought pursuant to the National Environmental Policy Act, section 7 of the ESA imposes both procedural and substantive obligations, and Plaintiffs have brought both types of claims here.  Plaintiffs cannot bootstrap their entire case, including their substantive section 7 claims, into being ripe simply because their procedural claim may be.  Furthermore, Plaintiffs' argument ignores the facts here that militate against review of this BiOp, including that the BiOp gives EPA one year to act, the one year does not expire until November 2009, EPA has not even announced what course it is going to take, and that judicial review may prove unnecessary depending on which course of action EPA ultimately chooses.  MTD at 12-14.

> **2.     Plaintiffs Have Failed to Demonstrate Significant Hardship Such That Their Case Would be Ripe for Review Under <u>Abbott Labs</u>.**

Plaintiffs have also failed to show how the situation they are in is analogous to any of the cases where hardship has been found to be sufficient for ripeness purposes.  Plaintiffs' affidavits assert that Plaintiffs suffer or will suffer two types of hardship as a result of NMFS's issuance of the challenged BiOp.  First, the affidavits claim that demand for Plaintiffs' products may be declining as a result of the

publication of the BiOp. Affidavit of Ephi Gur (Doc. No. 30-2) ("Gur Aff.") ¶ 4; Affidavit of Fernando Segovia (Doc. No. 30-3) ("Segovia Aff.") ¶ 4; Declaration of Martin Petersen (Doc. No. 30-4) ("Petersen Decl.") ¶¶ 4, 7. Second, Plaintiffs allege they face future uncertainty in establishing the proper production schedules to avoid either overproduction or underproduction of their products. Gur Aff. ¶¶ 5, 6; Segovia Aff. ¶¶ 5, 6; Petersen Decl. ¶¶ 5, 6. Because "a possible financial loss is not by itself a sufficient interest to sustain a judicial challenge to governmental action," Abbott Labs, 387 U.S. at 153, and because difficulties in business planning attributable to legal uncertainty also not does not constitute the requisite hardship for ripeness purposes, National Parks Hospitality Ass'n v. DOI, 538 U.S. 803, 811 (2003), neither of the reasons put forth in Plaintiffs' affidavits establishes hardship here.

In Abbott Labs, the plaintiffs were faced with the dilemma of either expending large amounts of capital to immediately comply with federal regulations or ignoring the regulations, thereby risking "serious criminal and civil penalties." Id. at 153. Because the plaintiffs were part of a "sensitive industry, in which public confidence in their … products is especially important," requiring the plaintiffs to postpone their challenge until an enforcement action was brought against them could "harm them severely and unnecessarily." Id.

Here, in contrast, Plaintiffs have not alleged that they face hardship due to the prospect of immediate criminal or civil enforcement actions as a result of the issuance of the BiOp. Nor could they, since EPA has yet to put in place any restrictions that they could violate. Plaintiffs' affidavits also do not allege that a loss of public confidence would result if this case was found to be unripe. Finally, Plaintiffs continue to make only vague and speculative assertions about the economic impact of the BiOp and have failed to provide sufficient specificity as to the amount their financial losses would be if

the court refuses to hear the case at this time.  See Segovia Aff. ¶ 5 (changes to production plan would be "extremely disruptive"); Petersen Decl. ¶ 7 ("anecdotal information" suggests that sales "may already have suffered a decline.").  Speculative allegations are insufficient to meet the  "immediate" and "direct" harm required for the hardship prong of the ripeness inquiry.  State Farm Mut. Auto. Ins. Co. v. Dole, 802 F.2d 474, 481-82 (D.C. Cir. 1986).

Since Plaintiffs cannot establish how their circumstances are similar to those found in Abbott Labs, they attempt to broaden the universe of harms that fall within the hardship prong of the ripeness test.  Plaintiffs cite to Texas v. United States, 497 F.3d 491 (5th Cir. 2007), for the proposition that "[h]ardship inheres in legal harms such as being 'force[d]…to modify [one's] behavior in order to avoid future adverse consequences.'"  Pls' Opp at 12.  This statement represents an overly-broad reading of the Texas court's interpretation of Ohio Forestry.   As the Supreme Court explained, being forced to modify one's behavior can qualify as hardship in some situations, for example, "agency regulations can sometimes force immediate compliance through fear of future sanctions." Ohio Forestry, 523 U.S. at 734.  However, contrary to Plaintiffs' assertion, Pls' Opp at 12, neither Ohio Forestry nor Texas stand for the proposition that the hardship prong is automatically met whenever any legal harm forces any alteration in behavior.

Even if Plaintiffs did accurately represent the rule from Texas regarding legal harms causing hardship, Plaintiffs have glossed over the obvious differences between these two cases.  Texas involved the state suing in its sovereign capacity regarding its relationship with Indian tribes and its consequent ability to regulate gaming on tribal reservations, and an attempt by the Department of Interior to "circumvent" the Supreme Court's most recent Eleventh Amendment jurisprudence.  497 F.3d at 493.

Texas, as a sovereign state, was forced to choose between participating in a process that eliminates a procedural safeguard promised by Congress, or risking the approval of gaming procedures in which the state had no input.  Id. at 499.  The hardship that Texas faced is in no way similar to the hardship Plaintiffs allege in their affidavits.  In the case at hand, Plaintiffs do not allege that they face the type of enforcement risk described in Ohio Forestry, and certainly do not face any risk in the loss of sovereign state power as was at stake in Texas, if they continue with their business as usual between now and the time that EPA concludes its decisionmaking process, nor have they alleged that possibility in their affidavits.

In fact, in Virginia Soc'y for Human Life v. FEC, 263 F.3d 379 (4th Cir. 2001), which Plaintiffs cite to only in a footnote, the Fourth Circuit addressed the hardship prong when a plaintiff faces this classic type of legal harm.  There, the Fourth Circuit found the plaintiffs' challenge to an existing FEC regulation to be ripe for review.  If the Virginia Society for Human Life had been unable to challenge the regulation for lack of ripeness, it would have faced "a significant impediment" in the exercise of its First Amendment rights due to the specter of possible prosecution under a law with "stiff criminal and civil penalties."  Id. at 390.  Because of the real possibility of civil or criminal penalties, the court found sufficient hardship for ripeness purposes.  Plaintiffs in this case have failed to show how their circumstances are remotely similar to those in Virginia Society.

Besides failing to show how the circumstances Plaintiffs find themselves in are remotely similar to any of the factual scenarios in the cases Plaintiffs cite in which the courts found sufficient hardship, Plaintiffs' arguments are equally flawed because they fail to show how they are being "forced" to modify their behavior.  Plaintiffs are not being "forced" to do anything as a consequence of the release

of the BiOp.  The release of the BiOp did not "force" Plaintiffs to make a choice between immediately

complying with some new regulation or facing the possibility of an enforcement action if they failed to

comply.  Indeed, to the contrary, the BiOp expressly gives EPA (and thereby the pesticide registrants)

one year to determine whether to implement the RPA.  MTD at 9, 13.  Plaintiffs' claim that the release

of the BiOp "is requiring that decisions be made now regarding production schedules for the upcoming

season" is a far cry from being forced into a course of action.  Pls' Opp at 13.  Businesses always must

plan for the future and always face uncertainties over future events.  While Plaintiffs may want early

clarity on whether the BiOp will be upheld so that there will be less uncertainty in their planning, they

are not being forced to make a particular business decision as a consequence of the BiOp.  Because

Plaintiffs do not face the type of legal harms for which hardship has been found, their challenge to the

BiOp is not ripe for review.

### 3.     Speculative Economic Harm by Itself is Insufficient to Establish Hardship for Ripeness.

Plaintiffs' alternative argument that in the Fourth Circuit, "the possibility of an imminent

economic harm" satisfies the hardship prong for ripeness is equally meritless.  Pls' Opp at 13 n.15.

First, as noted above, Plaintiffs have not demonstrated the possibility of imminent economic harm but

instead rely entirely on speculation about such harm.  In any event, Plaintiffs have mischaracterized the

Fourth Circuit's precedent regarding imminent economic harm as it relates to hardship.

Neither Arch Mineral Corp. v. Babbitt, 104 F.3d 660 (4th Cir. 1997) nor Fort Sumter Tours, Inc.

v. Andrus, 564 F.2d 1119 (4th Cir. 1977), both of which Plaintiffs cite as standing for the proposition

that "the possibility of an imminent economic harm" is sufficient to demonstrate hardship for ripeness

purposes. Pls' Opp at 13 n.15. In <u>Arch Mineral</u>, the plaintiff was notified that it would be placed in the Office of Surface Minerals' Applicant/Violator System ("AVS") for failing to pay abandoned mine land reclamation fees. As a result of being placed on the AVS list, Arch faced particularized "punitive consequences" on both its "present and future mining and reclamation projects through canceled or scaled back projects, increased costs for operation, loss of business reputation, disruptions in coal delivery, and job losses for workers." <u>Arch Mineral</u>, 104 F.3d at 668. Because the plaintiff faced the "Hobson's choice" of either immediately paying penalties, or being listed in the AVS, the court held that the hardship prong was met and the case was ripe for review. <u>Id.</u> at 669 n. 2. The Fourth Circuit did not state that possible imminent economic harm alone satisfied the hardship prong of the ripeness test.

In <u>Fort Sumter</u>, the plaintiff brought suit challenging the National Park Service's decision not to renew a concessions contract to provide tour boat operations around Fort Sumter National Monument. Instead of waiting until a new contract was finalized between the Park Service and one of the bidding companies, the Fourth Circuit determined that the case was ripe for review. The court was concerned that if it waited to invalidate whatever agreement the Park Service finalized such that the process had to start from scratch again, "negotiation costs would have to be repeated and tourism in the Charleston area might be adversely affected by the disruption in boat transportation between Fort Sumter and the mainland." <u>Fort Sumter</u>, 564 F.2d at 1124. While the court was clearly concerned with the negotiating costs for all parties, it was also concerned with the potential adverse consequences the public would endure if it declined to hear the case at that time. Here again, it is difficult to see how Plaintiffs could extrapolate from this case that possible imminent economic harm to a plaintiff alone is sufficient to satisfy the hardship prong of ripeness.

In contrast, cases that have addressed this issue have held that the hardship prong is not satisfied when the harm a plaintiff faces consists of difficulties in future planning due to future regulatory uncertainty. National Parks Hospitality Ass'n, 538 U.S. at 811; Bethlehem Steel Corp. v. EPA, 536 F.2d 156, 162-163 (7th Cir. 1976) ("[C]laims of uncertainty in…business and capital planning are not sufficient to warrant our review of an ongoing administrative process….They do not involve injuries on the order of the concrete immediate business costs."); Diamond Shamrock Corp. v. Costle, 580 F.2d 670 (D.C. Cir. 1978) (challenge to EPA regulations not ripe even though plaintiffs faced "acute dilemma" in capital planning to comply with new permitting requirements); accord Toilet Goods Ass'n, v. Gardner, 387 U.S. 158, 164 (1967) (challenge not ripe because "no irremediable adverse consequences flow from requiring a later challenge to this regulation.").

Plaintiffs' claims here are much more similar to those in National Parks Hospitality Ass'n and Bethlehem Steel than to those in Abbott Labs and consequently do not satisfy the hardship prong for ripeness. Each of the affiants' main concerns is that their business faces difficulties in determining exactly how much product to produce in the near future. If Plaintiffs incorrectly anticipate that the "BiOp restrictions will be adopted and/or the company overestimates the decline in demand … this could result in lost sales to the company." Petersen Decl. ¶ 6. Conversely, if Plaintiffs decide to maintain current production levels and the BiOp is upheld by the Court they "will be left with excess production that cannot be immediately sold and may need to be sold at a loss." Gur Aff. ¶ 6. See also Petersen Decl. ¶ 6 (excess product will lead to "increased storage and maintenance costs"). While these scenarios are certainly possible, they could also be attributable to any other market variable changing unexpectedly. Plaintiffs' own affidavits acknowledge that setting production levels for their products is

a highly complicated process that changes in response to market demand and other factors. Gur Aff. ¶ 5; Segovia Aff. ¶ 5. Plaintiffs may (or may not) have to expend capital in the future as a result of EPA's decision regarding implementation of the BiOp. But the fact that Plaintiffs may be having and may have future difficulties in planning for that event is simply not sufficient by itself to establish hardship under any ripeness analysis.

## II. THE COURTS OF APPEALS HAVE EXCLUSIVE JURISDICTION OVER PLAINTIFFS' CLAIMS.

While NMFS has demonstrated that this Court lacks jurisdiction because Plaintiffs' case is not ripe, even assuming, *arguendo*, it was ripe, the Court lacks jurisdiction because jurisdiction for Plaintiffs' challenge to the NMFS BiOp lies exclusively in the courts of appeals. Notably, Plaintiffs do not contest the fact that the courts of appeals will have exclusive jurisdiction if EPA determines to implement the current or an alternative RPA. Rather, they argue that "Bennett provides sufficient precedent to demonstrate the irrelevance of this argument" and that, "[e]ven if it did not, the statutory provision and case law Defendants rely upon are unavailing." Pls' Opp at 13. Plaintiffs' arguments are the ones that are unavailing. Bennett is not on point at all regarding exclusive jurisdiction and Plaintiffs have failed to distinguish, or even discuss, the plethora of authority demonstrating that this case must be brought in the courts of appeals even though EPA has not taken a cancellation action under FIFRA.

### A. Bennett is Inapposite.

Plaintiffs' argument that "Bennett provides sufficient precedent to demonstrate the irrelevance of [NMFS's argument that Plaintiffs' case can only be heard in the courts of appeals in the context of a challenge to an EPA order cancelling Plaintiffs' pesticide registrations under FIFRA]," is without merit.

Pls' Opp at 13. The issue of exclusive jurisdiction was not raised or discussed in any way in <u>Bennett</u>. This is not surprising since the action the action agency (the Bureau of Reclamation) was to take in <u>Bennett</u> did not result in a decision that had to be challenged in the courts of appeals, such as in this case. Thus, <u>Bennett</u> is inapposite.

**B.    FIFRA's Exclusive Jurisdiction Provision is Triggered Here.**

FIFRA's exclusive jurisdiction provision is triggered here even though Plaintiffs do not allege a FIFRA claim, and EPA has not issued an order pursuant to FIFRA cancelling Plaintiffs' pesticide registrations. Indeed, Plaintiffs' argument only serves to highlight that this case is not ripe. Pls' Opp at 13. Importantly, their argument does not undermine the wealth of authority holding that the statutory basis for a plaintiff's claims is not the relevant inquiry and that the courts of appeals must protect their future jurisdiction even when a claim has not yet been brought. MTD at 16-25.

The fact that Plaintiffs have not alleged a claim under FIFRA in this case does not mean that they can escape the exclusive jurisdiction provision of FIFRA. The courts have consistently held that a plaintiff cannot avoid the exclusive jurisdictional provisions of one statute by alleging a claim under another statute. <u>See</u> MTD at 20-23. Most on point here are the numerous decisions that have held that the courts of appeals have exclusive jurisdiction to review a challenge to a BiOp even though the plaintiffs in those cases did not challenge the action agency's decision under the statute that conferred the exclusive jurisdiction. <u>Id.</u> at 22-23.

Furthermore, the result arrived at in these cases is not affected by the fact that EPA has not issued a final order pursuant to FIFRA. As NMFS has already explained, this Court "lacks jurisdiction over this lawsuit because the prohibition against district court review of FIFRA orders applies not only

to final orders, but also to matters that are not yet the subject of a final order but that, through the ordinary administrative process, ultimately could be." MTD at 18.  As support for this statement, NMFS cited to Telecommunications Research & Action Ctr. v. FCC ("TRAC"), 750 F.2d 70, 77 (D.C. Cir. 1984) and Public Utility Comm'r v. Bonneville Power Admin., 767 F.2d 622, 626 (9th Cir. 1985).  Id. at 18-19.

Ignoring Public Utility Comm'r entirely, Plaintiffs argue that this Court is not bound by TRAC and, even if it were, that the TRAC analysis is inapplicable here because they have alleged claims under the ESA only and not under FIFRA.  Pls' Opp at 14-15.  Plaintiffs' arguments are faulty for several reasons.

First, although the Fourth Circuit may not have expressly adopted the holding from TRAC on exclusive jurisdiction, the Court has cited to TRAC favorably, and certainly has not rejected the D.C. Circuit's holding.  See In re City of Virginia Beach, 42 F.3d 881, 885 (4th Cir. 1994); State of North Carolina Envtl. Policy Inst. v. EPA, 881 F.2d 1250, 1257 (4th Cir. 1989); Virginia Dep't of Educ. v. Riley, 23 F.3d 80, 84 (4th Cir. 1994).  Second, Plaintiffs are incorrect that TRAC's analysis on exclusive jurisdiction is only applicable where a plaintiff asserts a claim that "falls 'directly within' the exclusive jurisdictional provision at issue requiring review be in a Court of Appeals."  Pls' Opp at 15 (quoting American Farm Bureau v. EPA, 121 F. Supp. 2d 84, 93 (D.D.C. 2000)).  Plaintiffs' interpretation of American Farm Bureau cannot be correct as it would directly conflict with the cases cited above holding that a plaintiff cannot circumvent the exclusive review provisions of one statute by

pleading claims under another statute.[4]  It would also conflict with <u>TRAC</u> itself, which stated its holding as follows: "where a statute commits review of agency action to the Court of Appeals, *any suit seeking relief* that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals."  <u>TRAC</u>, 750 F.2d at 75 (emphasis added).  Thus, <u>TRAC</u>'s holding is much broader than Plaintiffs' contend, applying not to particular claims, but to any suit where the grant of the relief requested might affect the future jurisdiction of the courts of appeals.  This is the same conclusion reached in <u>Public Utility Comm'r</u>, which, while not controlling here, is more persuasive than the two district court cases Plaintiffs cite as it is more on point here.  <u>Public Utility Comm'r</u>, 767 F.2d at 626 (plaintiffs could not evade exclusive jurisdiction provision of the Pacific Northwest Electric Power Planning and Conservation Act by alleging challenge to a "proceeding" rather than an "action").

<u>TRAC</u>'s holding is particularly relevant here, where Plaintiffs' claims under the ESA are inextricably intertwined with EPA's registration under FIFRA of Plaintiffs' pesticide products containing chlorpyrifos, diazinon, and malathion.  <u>See</u> MTD at 23-24.  Thus, although Plaintiffs' complaint alleges that the BiOp is arbitrary and capricious, or otherwise contrary to the ESA, it also

---

[4] Moreover, Plaintiffs have taken the "directly within" quote from <u>American Farm Bureau</u> out of context.  What the district court actually stated there was that "[i]t is clear under <u>TRAC</u> that jurisdiction over any claim of EPA action or inaction falling directly within the provisions of 21 U.S.C. § 346a (h)(1) would only be reviewable by the court of appeals."  <u>Id.</u> at 93.  Thus, the statement is unremarkable as it merely says that a claim falling directly within the provisions of a certain statute are exclusively reviewed in the court of appeals, not that a court must literally limit itself to the claims pleaded in the complaint to analyze whether there is exclusive jurisdiction in the courts of appeals.  In addition, <u>American Farm Bureau</u> was concerned with a statute with a very narrow exclusive review provision.  <u>Id.</u> at 93 ("the <u>TRAC</u> analysis of the [Federal Food, Drug, and Cosmetic Act] is not comparable to the <u>TRAC</u> analysis of statutes with broader appellate review provisions.").  In contrast, in this case, Plaintiffs do not contest that their FIFRA claim would fall within the exclusive review provision of FIFRA section 16(b).

challenges the possible future FIFRA administrative action that could affect the continued registration itself, an action which is reviewable exclusively in the courts of appeals.

## CONCLUSION

For all the foregoing reasons, as well as the reasons set forth in the Memorandum in Support of Federal Defendants' Motion to Dismiss, this Court lacks jurisdiction and should dismiss Plaintiffs' case.

Dated: July 2, 2009

Respectfully submitted,

ROD J. ROSENSTEIN
United States Attorney
LARRY D. ADAMS
Assistant U.S. Attorney
U.S. Attorney's Office
36 South Charles Street
Fourth Floor
Baltimore, MD 21201
(410) 209-4800

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice


_____/s/ Meredith L. Flax_____
MEREDITH L. FLAX
Trial Attorney (D.C. Bar # 468016)
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-0663
Phone: (202) 305-0404
Fax: (202) 305-0275

*Attorneys for Federal Defendants*

OF COUNSEL:
Pamela Lawrence

NOAA General Counsel's Office
Silver Spring, MD

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOW AGROSCIENCES LLC, et al.,          )
                                       )
                    Plaintiffs,        )
                                       )
v.                                     )          Civ. No. 09-CV-824-AW
                                       )
NATIONAL MARINE FISHERIES SERVICE, et al.,  )
                                       )
                    Defendants,        )
                                       )
_____)

## CERTIFICATE OF SERVICE

     To the Court, the parties, and their attorneys of record:

     I certify that on this 2nd day of July, 2009, a copy of the foregoing Reply in Support of Federal

Defendants' Motion to Dismiss was sent automatically by the CM/ECF system to the following

attorneys of record:

***David Eric Markert***
Wiley Rein LLP
1776 K St NW
Washington, DC 20006
dmarkert@wileyrein.com

***David B Weinberg***
Wiley Rein LLP
1776 K St NW
Washington, DC 20006
dweinberg@wileyrein.com

***Eric Andreas***
Wiley Rein LLP
1776 K St NW
Washington, DC 20006
eandreas@wileyrein.com

***P Nicholas Peterson***
Wiley Rein LLP
1776 K St NW
Washington, DC 20006
npeterson@wileyrein.com

***Deborah Brand Baum***
Pillsbury Winthrop Shaw Pittman LLP
2300 N St NW
Washington, DC 20037
deborah.baum@shawpittman.com

***David E Menotti***
Pillsbury Winthrop Shaw Pittman LLP
2300 N St NW
Washington, DC 20037
david.menotti@pillsburylaw.com

       /s/ Meredith L. Flax
MEREDITH L. FLAX