IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| DOW AGROSCIENCES LLC, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *   Civil Action No. AW-09-824 |
| | * |
| NATIONAL MARINE FISHERIES | * |
| SERVICE, *et al.*, | * |
| | * |
| Defendants. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

Plaintiffs Dow AgroSciences LLC, Makhteshim Agan of North America, Inc., and Cheminova, Inc. USA bring this action against Defendants National Marine Fisheries Service ("NMFS") and James W. Balsiger ("Balsiger")[1] asserting violations of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA") and Endangered Species Act, 16 U.S.C. § 1531, *et seq.* ("ESA"). Currently pending before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction. The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant motion. The issues have been briefed, and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will grant Defendants' motion.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The ESA is the law that governs the government's protection of endangered and threatened species ("protected species"). NMFS administers the ESA with respect to marine and anadromous

---

[1] Balsiger is the Acting Assistant Administrator of NMFS. In that role, Balsiger is responsible for administering the ESA.

species.[2] There are 28 protected species of Pacific salmonids. NMFS has designated critical habitat for 26 of these protected species.

Under Section 7 of the ESA, each federal agency must ensure, in consultation with NMFS, that any action authorized, funded, or carried out by such agency is not likely to jeopardize any protected species or destroy or adversely modify critical habitat. 16 U.S.C. § 1536 (a)(2). The consultation process begins when a federal agency determines that a proposed action could effect a protected species and then submits a formal consultation request to NMFS. The consultation process ends when NMFS issues a biological opinion, which contains NMFS's determination regarding whether the proposed agency action is likely to jeopardize any protected species or destroy or adversely modify any critical habitat. If NMFS determines that jeopardy is likely, NMFS will offer a reasonable and prudent alternative ("RPA"), which, if implemented by the agency, will not create jeopardy in the opinion of NMFS. 16 U.S.C. § 1536 (b)(3). Under certain circumstances, NMFS must also issue an Incidental Take Statement ("ITS"), which specifies the impact of anticipated "take"[3] on a protected species. 16 U.S.C. § 1536 (b)(4). As part of an ITS, NMFS must propose reasonable and prudent measures ("RPMs") to minimize the impact of incidental take and terms and conditions to implement the RPMs. *Id.* If the agency complies with the terms and conditions, then any take that results from the agency's action is permissible. 16 U.S.C. § 1536 (o)(2).

This case involves the effects of pesticides containing the active ingredients chlorpyrifos, malathion, and diazinon on protected species of Pacific salmonids and their habitat. Pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136, *et seq.* ("FIFRA"), pesticides

---

[2] The United States Fish and Wildlife Service administers the ESA with respect to terrestrial and freshwater species.

[3] Under the ESA, "'take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1632 (19).

must be registered by the Environmental Protection Agency ("EPA") prior to their distribution and sale. Chlorpyrifos was first registered in 1965; malathion and diazinon were first registered in 1956. Plaintiffs, or their corporate parents or affiliates, hold technical registrations for chlorpyrifos, malathion, and diazinon, and/or end-use registrations for products manufactured with these registered chemicals.

As required by a 1988 amendment to FIFRA, the EPA implemented a reregistration process for older chemicals, including chlorpyrifos, malathion, and diazinon. During reregistration, companies holding prior registrations for these chemicals submitted scientific data supporting reregistration and informed the EPA of the future intended uses for these chemicals.[4] Upon completion of reregistration, the EPA issued Registration Eligibility Decisions ("REDs") for chlorpyrifos, malathion, and diazinon in July 2006.[5] The REDs presented the EPA's human health and ecological risk assessments and EPA's conclusions regarding reregistration eligibility of the chemicals. The REDs also listed the uses of the chemicals that would be lawful once the REDs were implemented. After issuing a RED, the EPA typically entered into a Memorandum of Understanding with the pesticide registrants to establish label guidelines. A party violates FIFRA and may face an enforcement action if it uses a pesticide containing a registered chemical in a manner inconsistent with the product's label.

In early 2001, the EPA was sued for failing to consult with NMFS on the effects that 54 pesticide active ingredients (including chlorpyrifos, malathion, and diazinon) had on the 28 protected species of Pacific salmonids and their critical habitat. As discussed above, such a consultation is required by Section 7 of the ESA. Accordingly, on July 2, 2002, the United States District Court for the Western District of Washington ordered the EPA to determine which of those

---

[4] Some former uses for these chemicals were cancelled voluntarily by the product registrants.

[5] The EPA also issued Interim Registration Eligibility Decisions ("IREDs") for two of the three chemicals at issue in this case. The Court understands that the IREDs were essentially draft versions of the REDs.

54 pesticide active ingredients could effect protected salmonids and to initiate and complete Section 7 consultations with NMFS for each of those chemicals. In total, the EPA determined that 37 chemical registrations (including chlorpyrifos, malathion, and diazinon) could effect protected species of Pacific salmonids. Thus, the EPA made formal consultation requests to NMFS relating to the REDs[6] for chlorpyrifos, malathion, and diazinon.[7] NMFS initially did not respond to the EPA's consultation requests.

In 2007, NMFS was sued for unreasonable delay in completing the EPA's consultation requests. On July 30, 2008, NMFS entered into a stipulated settlement agreement with the plaintiffs in that case and agreed to a schedule for the outstanding consultation requests. On July 31, 2008, NMFS released a draft biological opinion regarding the EPA's consultation request for chlorpyrifos, malathion, and diazinon. The draft biological opinion found that the EPA's REDs for chlorpyrifos, malathion, and diazinon are likely to jeopardize the continued existence of the protected species of Pacific salmonids and to destroy or adversely modify their critical habitat. After learning of the draft biological opinion, Plaintiffs met with the EPA and NMFS on several occasions. Plaintiffs also provided additional scientific studies to NMFS. Through these meetings and studies, Plaintiffs sought to convince NMFS that the proposed uses of chlorpyrifos, malathion, and diazinon did not jeopardize the protected Pacific salmonids or their habitat.

On November 18, 2008, NMFS released the final biological opinion (the "Biological Opinion"). The Biological Opinion found that the EPA's REDs are likely to jeopardize the continued existence of 27 protected species of Pacific salmonids and are likely to destroy or adversely modify critical habitats for 25 protected salmonids with designated critical habitat. As part of the Biological Opinion, NMFS offered a RPA, which included five labeling requirements and

---

[6] The consultations were initially made while the IREDs were in effect and before the REDs were issued. However, by the time NMFS reviewed the proposals, the REDs had been issued.

[7] EPA also made consultation requests for 34 other active ingredients found in pesticides.

an EPA monitoring program. The Biological Opinion gives the EPA one year, until November 18, 2009, to implement the RPA. As part of the Biological Opinion, NMFS also issued an ITS, non-discretionary RPMs, and non-discretionary terms and conditions to implement the RPMs. To be exempt from liability under Section 9 of the ESA, the EPA must comply with the RPMs' implementation terms and conditions..

In their complaint, Plaintiffs argue that NMFS violated the APA and ESA by developing and issuing the Biological Opinion, RPA, ITS, and RPMs. On June 1, 2009, Defendants filed the currently pending Motion to Dismiss for Lack of Jurisdiction.

## II.     STANDARD OF REVIEW

There are two ways to present a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). First, a party may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In this situation, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* Second, a party may contend that the jurisdictional allegations in the complaint are not true. *Id.* In the latter situation, "the burden of proving subject matter jurisdiction is on the plaintiff," and the Court is "to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings . . . ." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted). In this context, the plaintiff "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

**III.   ANALYSIS**

In seeking dismissal of this case, Defendants argue that this Court lacks jurisdiction for two reasons. First, Defendants assert that this matter is not ripe. Second, Defendants assert that, if the matter were ripe, the federal courts of appeals have exclusive jurisdiction to hear this type of claim. For purposes of this motion only, and without reaching a conclusion on the matter, the Court assumes that the matter is ripe[8] and proceeds to address Defendants' second argument, which the Court finds dispositive of the case.

Although Plaintiffs are challenging the validity and legality of the Biological Opinion, they are in essence attempting to prevent the EPA from adopting the RPA. Indeed, as far as the Court is aware, the Biological Opinion will have no binding effect upon Plaintiffs unless the EPA implements the RPA. Although they do not assert so in their opposition papers, Plaintiffs have previously informed that the Court that, if the EPA implements the RPA, Plaintiffs "do not expect to be able to" voluntarily comply with the EPA's label changes. (Pls.' Mot. to Expedite Disposition at 4.) If that happened, EPA would be forced to initiate a FIFRA cancellation proceeding. *See* 7 U.S.C. § 136d (b). The results of that proceeding could only be appealed in a federal court of appeals. *See* 7 U.S.C. § 136n (b).

In *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"), the court held that "where a statute commits final agency action to review by the Court of Appeals, the appellate court has exclusive jurisdiction to hear suits seeking relief that might affect its future statutory power of review." *Id.* at 72. *See also Pub. Util. Comm'r v. Bonneville Power Admin.*, 767 F.2d 622, 626 (9th Cir. 1985). In *TRAC*, the court addressed a claim that the FCC had unreasonably delayed issuing a final order. *TRAC*, 750 F.2d at

---

[8] As Defendants second argument sufficiently disposes of the case, the Court will not address the issue of ripeness. *See Ashwander v. Tenn. Valley Auth.,* 297 U.S. 288, 347 (1936) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

75. As it was clear that review of final FCC orders was committed to the exclusive jurisdiction of the federal courts of appeals, the *TRAC* court held that review of a claim for failure to issue a final order in a reasonable time was also within the court of appeals' jurisdiction. *Id.*

Plaintiffs argue that *TRAC* has not been adopted by the Fourth Circuit and thus is not binding upon this Court. Although Plaintiffs are correct that the Court is not bound to follow *TRAC*, the Court finds *TRAC* persuasive in this case. The D.C. Circuit deals with a vast amount of administrative cases, and its holding on such matters are highly instructive in the absence of Fourth Circuit precedent.

Plaintiffs also argue that *TRAC* is inapplicable because *TRAC*'s "controlling inquiry is whether the claim brought by plaintiffs falls 'directly within' the exclusive jurisdictional provision at issue requiring review be in the Court of Appeals." (Pls.' Opp'n at 15.) Plaintiffs assert that this is not the case here because they are challenging NMFS's decision under the ESA and not the EPA's decision under FIFRA. This argument also is unpersuasive. The Biological Opinion challenged in this case was not issued in a vacuum; it into came into existence at the request of the EPA pursuant to reregistration under FIFRA. Were this Court to hear the case and uphold the validity of the Biological Opinion, that decision undoubtedly "might affect [the court of appeals'] future statutory power of review." As such, the Court believes that jurisdiction over this case properly lies in a federal court of appeals.

The D.C. Circuit has, in a similar case, made statements that strongly support this decision. *See City of Tacoma v. FERC*, 460 F.3d 53 (D.C. Cir. 2006) ("*City of Tacoma*"). In that case, the plaintiffs challenged a FERC licensing decision and a biological opinion relied upon by FERC. *See id.* at 74-76. Under applicable law, orders issued by FERC during a licensing proceeding can only be challenged in a federal court of appeals. 16 U.S.C. § 825*l*. The court found that it had jurisdiction to hear the challenge to the biological opinion because, "when a BiOp is prepared in the

course of a FERC licensing proceeding, the only means of challenging the substantive validity of the BiOp is on review of FERC's decision in the court of appeals." *City of Tacoma*, 460 F.3d at 76. *See also Cal. Save Our Streams Council v. Yeutter*, 887 F.2d 908, 911-912 (9th Cir. 1989) (finding that the district court lacked jurisdiction to hear a challenge to the Forest Services' recommendations to FERC related to a FERC licensing procedure, because the federal court of appeals has exclusive jurisdiction to hear challenges related to FERC licensing procedures); *City of Tacoma v. Nat'l Marine Fisheries Serv.*, 383 F. Supp. 2d 89, 92-93 (D.D.C. 2005) (dismissing, at the district court level, the same challenge addressed in *City of Tacoma v. FERC*, 460 F.3d 53, on jurisdictional grounds despite the plaintiffs' argument that they were only challenging the NMFS's biological opinion and not the final FERC order itself.).

Read broadly, *City of Tacoma* suggests that a biological opinion prepared during a licensing proceeding—where the federal courts of appeals have exclusive jurisdiction to review orders arising out of those proceedings—is not ripe for review until the consulting agency relies on that biological opinion. Read narrowly, *City of Tacoma* suggests that any challenge to biological opinion prepared during a licensing proceeding—where the federal courts of appeals have exclusive jurisdiction to review orders arising out of those proceedings—must be filed in a federal court of appeals. In deciding this case, the Court relies on the more narrow reading of *City of Tacoma*.

Plaintiffs argue that *City of Tacoma* is inapplicable because FERC had issued an order in that case. The Court does not believe that fact diminishes the persuasive value of *City of Tacoma*. In the case before this Court, the Biological Opinion was prepared during an EPA licensing proceeding under FIFRA. If the EPA relies on the Biological Opinion and seeks to cancel Plaintiffs' pesticide registrations, EPA will have to issue an order under FIFRA. Any such order could only be challenged in a federal court of appeals. As such, the Court believes that the logic of *City of Tacoma* is applicable and, thus, finds that any challenge to the Biological Opinion in this case should be filed

in a federal court of appeals.  This decision upholds Congress' intent to vest jurisdiction to review orders arising out of FIFRA proceedings in the federal courts of appeals.  Were the Court to decide otherwise, it would allow Plaintiffs to creatively plead their case in a manner that circumvents the will of Congress.  *See Yeutter*, 887 F.2d at 912 (finding that the "conditions imposed by the [Forest] Service have no significance outside the [FERC] licensing process, and we do not believe that the jurisdictional remedy prescribed by Congress hangs on the ingenuity of the complaint.").

In reaching this decision, the Court is aware that other cases have found that district courts have jurisdiction to hear challenges to biological opinions under certain circumstances.  For example, in *National Wildlife Federation v. National Marine Fisheries Service*, 422 F.3d 782 (9th Cir. 2005),  the court found that the district court had jurisdiction to hear challenges to a biological opinion pertaining to a proposed action by the Federal Columbia River Power System ("FCRPS"), which operated dams.  *See id.* at 791.  The Court notes, however, that nothing in that case indicated that there was any exclusive jurisdiction to review FCRPS's decisions.  Here, it is clear NMFS issued the Biological Opinion in connection with a FIFRA action being taken by the EPA.  As the federal courts of appeals have exclusive jurisdiction over FIFRA orders, the Court finds that it does not have jurisdiction over matters that could directly affect that exclusive jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.  A separate Order will follow.

  July 29, 2009                                                   /s/
        Date                                                 Alexander Williams, Jr.
                                                           United States District Judge